IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


DIANNA L. ARMS,

                    Plaintiff,

        vs.                                Civil Action 2:10-CV-977
                                           Judge Sargus
                                           Magistrate Judge King


COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.


## REPORT AND RECOMMENDATION

        This is an action instituted under the provisions of 42 U.S.C. §§ 405(g), 1383 for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income.  This matter is now before the Court on *Plaintiff's Statement of Errors*, Doc. No. 9, the Commissioner's memorandum in opposition, Doc. No. 10, and plaintiff's reply memorandum, Doc. No. 11.

## I.    Procedural History

        Plaintiff Dianna Arms filed her application for benefits on December 6, 2004, alleging that she has been disabled since November 1, 2002.  The application was denied initially and upon reconsideration and plaintiff requested a *de novo* hearing before an administrative law judge.

        On January 10, 2008, plaintiff, represented by counsel, appeared and testified at an administrative hearing, as did Thomas Grzesik, who testified as a vocational expert.  *A.R.* 423-456.

In a decision dated February 28, 2008, an administrative law judge found that plaintiff's severe impairments consist of arthritis of the left knee, borderline intellectual functioning and/or mild mental retardation. *A.R.* 55. The administrative law judge went on to find that plaintiff's impairments neither meet nor equal a listed impairment and leave her with the residual functional capacity to perform a reduced range of light work. *A.R.* 55-59. Because the administrative law judge found that this residual functional capacity permitted the performance of a significant number of jobs, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. *A.R.* 60.

The Appeals Council remanded the matter for a new hearing, and directed that the administrative law judge obtain the services of a medical expert. *A.R.* 63, 69-73.

On remand, two more administrative hearings were held: on December 9, 2008, and on July 24, 2009. Plaintiff, represented by counsel, appeared and testified at each. *A.R.* 385-422; 362-84. M. Bruce Walsh, Ph. D., also testified as a vocational expert at the July 24, 2009 hearing. In a decision dated November 4, 2009, a different administrative law judge found that plaintiff's severe impairments consist of left knee arthritis, low weight, borderline intellectual functioning/mild mental retardation, and affective and anxiety-related disorders. *A.R.* 19-20. The administrative law judge went on to find that plaintiff's impairments neither meet nor equal a listed impairment and leave her with the residual functional capacity to perform a reduced range of light work. *A.R.* 20-24. Relying on the

testimony of the vocational expert, the administrative law judge found that plaintiff's residual functional capacity permits her to perform work that exists in significant numbers, including work as a cleaner and laborer/packer. *A.R.* 24-25. The administrative law judge therefore concluded that plaintiff is not disabled within the meaning of the Social Security Act. *A.R.* 25.

That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on September 2, 2010. *A.R.* 5-8.

## II. Standard

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the

matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

## III. Evidence

Plaintiff was thirty-nine years old at the time the administrative law judge issued the final administrative decision. *A.R.* 25, 394. She attended school through the ninth grade and started, but did not complete, tenth grade because she quit and had a child. *A.R.* 401-402. Plaintiff admits that she "didn't hardly even go to school" when enrolled and her transcripts reflect that she received primarily poor grades, failing multiple classes. *A.R.* 402, 107-108. Plaintiff has no prior relevant work experience. *A.R.* 24.

On September 4, 2003, plaintiff, complaining of left knee pain, was seen by William Miser, M.D., plaintiff's primary care physician since March 2001. *A.R.* 166, 261. On examination, plaintiff's left knee had a good range of motion. *A.R.* 261. An x-ray of the left knee following the examination was normal. *A.R.* 274-75.

On November 18, 2004, plaintiff presented to Dr. Miser with complaints of persistent knee pain, inability to gain weight, increased stressors resulting from family difficulties, fatigue, and crying spells. *A.R.* 179, 259. Dr. Miser diagnosed left knee pain, low weight and mild depression. *A.R.* 180, 260. He referred plaintiff to counseling and recommended knee exercises. *Id*.

On December 16, 2004, an examination by Dr. Miser revealed left knee tenderness; he recommended continued knee exercises. *A.R.* 177-

78, 257-58.

On January 18, 2005, T. Rodney Swearingen, Ph.D., performed a consultative psychological evaluation at the request of the Bureau of Disability Determination. *A.R.* 109-113. During the exam, plaintiff complained of tissue damage and weakness in her left leg resulting from an earlier injury. *A.R.* 109. Plaintiff also reported a history of sexual assaults as a child. *Id.* Plaintiff complained of bad nerves and depression; she denied attempted suicide or nervous breakdown. *A.R.* 109-110. According to plaintiff, she quit school because she "was dumb and did not want to listen to her mother." *A.R.* 110.

According to plaintiff, she cannot work because of her depression, nerves and her leg/physical health. *Id.* Although she had never worked longer than one month, she has never been fired from a job. *Id.* She denied having problems interacting with coworkers and supervisors; she reported difficulty following instructions and accomplishing repetitive tasks. *Id.*

On clinical examination, plaintiff maintained good eye contact and spoke directly. *A.R.* 111. Plaintiff reported suspiciousness, repetitive thoughts and behaviors. *Id.* Plaintiff also reported having crying spells, being depressed, and feeling hopeless at times. *Id.* She worries about bills, finances, and her marriage. *Id.* She also reported hallucinations. *Id.* She enjoys playing cards, watching television and doing crossword puzzles. *Id.* Plaintiff was alert and oriented and was able to follow instructions during the evaluation. *A.R.* 112. Persistence was average and pace was adequate. *Id.* She had difficulty demonstrating short-term auditory memory and her

abstract thinking was poor; verbal abilities were average. *Id.* At the time of the evaluation, plaintiff was living with her husband and son, who both receive disability benefits. *Id.* During a typical day, plaintiff stays in the house, cleans, prepares meals, and looks after her son. *Id.* She can bathe and dress herself without help, write letters, read the newspaper, tell time, make change, and take medications without reminders. *Id.* Dr. Swearingen reported that plaintiff acknowledged that she has no problems managing money. *A.R.* 113. Plaintiff does not have a current driver's license and relies on her husband to do the shopping. *A.R.* 112. Plaintiff reported having many friends and socializing often. *Id.*

Dr. Swearingen diagnosed post traumatic stress disorder ("PTSD") and assigned a global assessment of functioning ("GAF") score of 55, which is suggestive of moderate impairment. *A.R.* 112-113. Plaintiff's ability to relate to others, including fellow workers, and her mental ability to maintain attention, concentration, persistence, and pace sufficient to perform repetitive tasks were mildly impaired. *A.R.* 113. Plaintiff's mental ability to understand, remember, and follow instructions and her mental ability to withstand stress and pressures of day-to-day work activity were mildly to moderately impaired. *Id.*

On January 19, 2005, William Blackburn, Ph.D., a psychologist who previously treated plaintiff, again examined plaintiff upon referral by her family physician. *A.R.* 115, 331. Plaintiff reported developmental delays in walking and talking. *A.R.* 116. She attended school through the tenth grade and received cognitive assistance in

school.  *A.R.* 119.  Plaintiff reported sometimes feeling unhappy, sad, depressed, worried, afraid, scared, lonely or isolated.  *A.R.* 125. She also reported sleep disturbances, trouble controlling her anger, and losing her appetite or being worried about her weight.  *Id.* According to plaintiff, she has trouble making or keeping friends and has had serious problems with her spouse.  *A.R.* 126.  Dr. Blackburn noted that plaintiff had poor insight, appeared anxious and depressed, and had below normal intellect with suspicious thoughts.  *A.R.* 127. Dr. Blackburn diagnosed an adjustment disorder with emotional features and mild mental retardation/developmental delays.  He assigned a GAF score of 55.  *A.R.* 226.  He anticipated providing nine months of counseling and noted that plaintiff's prognosis was fair.  *Id.*  Dr. Blackburn saw plaintiff and her husband for couple's therapy through November 2005.  *A.R.* 139-156.  During some of these subsequent visits with Dr. Blackburn, plaintiff reported feeling depressed and stressed over family situations and her chronic pain.  *A.R.* 149, 152, 155.

On June 23, 2005, Dr. Miser reported that plaintiff was disabled as a result of moderately impaired intellectual functioning, left leg (knee) pain and weakness, and PTSD.  *A.R.* 166.

On September 30, 2005, Dr. Blackburn sent a letter to plaintiff's counsel, advising that plaintiff, who had been referred to Dr. Blackburn for assistance in strengthening her parenting skills, and her husband had learned how to care for their medically fragile son. *A.R.* 331.  Dr. Blackburn also noted that plaintiff, upon Dr. Miser's recommendation, returned to psychotherapy in January 2005 due to stress over family conflicts and low grade chronic levels of anxiety

and depression.  *Id.*

On March 29, 2006, Dr. Miser completed a Multiple Impairment
Questionnaire and noted that he treats plaintiff every three to six
weeks.  *A.R.* 236, 243.  Dr. Miser diagnosed chronic left knee pain,
PTSD and a moderate impairment of intellectual functioning.  *A.R.* 236.
In support of this diagnosis, Dr. Miser referred to Dr. Swearingen's
January 18, 2005 report and plaintiff's left knee tenderness.  *A.R.*
236-237.  Plaintiff's primary symptoms included pain in her left knee
during exertion, bending and stooping, as well as anxiety and stress.
*A.R.* 237.  Dr. Miser noted that plaintiff's pain occurred weekly,
almost daily.  He rated her level of pain and level of fatigue as
moderately severe.  *A.R.* 238.   In estimating plaintiff's residual
functional capacity during an eight-hour work day, Dr. Miser opined
that plaintiff could sit for three hours a day, stand/walk for one
hour a day, and must get up and move around every hour for ten
minutes.  *A.R.* 238-239.  Dr. Miser opined that plaintiff could lift
five to ten pounds occasionally, but never carry any weight.  *A.R.*
239.  Plaintiff's pain, fatigue or other symptoms were severe enough
to interfere with her attention and concentration.  *A.R.* 241.  Dr.
Miser also opined that plaintiff was incapable of even low stress work
and that she needed to take unscheduled breaks to rest.  *Id.*  He
estimated that plaintiff would be absent from work, on average, more
than three times per month.  *A.R.* 242.

At a mid-April 2006 office visit, Dr. Miser noted that
plaintiff's mental health was stable.  *A.R.* 251-252.  An MRI of
plaintiff's left knee revealed degenerative changes of the posterior

horn of the medial meniscus.  *A.R.* 277-278.

Dr. Blackburn completed a Psychiatric/Psychological Impairment
Questionnaire dated June 14, 2006.  *A.R.* 282-289.  He diagnosed
depression, anxiety and indecision in relation to family stressors as
well as mild mental retardation.  *A.R.* 282.  Dr. Blackburn assigned a
current GAF score of 55 and rated her highest GAF score in the last
year as 58.  *Id.*  In support of his diagnosis, Dr. Blackburn
identified clinical findings of poor memory, mood disturbances,
emotional lability, difficulty thinking or concentrating, decreased
energy, and pathological dependence or passivity.  *A.R.* 283.  He also
noted plaintiff's recent IQ measurement of 63.  *Id.*  Dr. Blackburn
identified plaintiff's primary symptoms as anxiety, fear of being
alone, mild to moderate chronic depression, and ongoing family
conflicts.  *A.R.* 284.  Dr. Blackburn opined that plaintiff's ability
to remember locations and work-like procedures and ability to
understand and remember one or two step instructions were moderately
limited and that her ability to understand and remember detailed
instructions was markedly limited.  *A.R.* 285. He rated as markedly
limited her ability to carry out detailed instructions, ability to
maintain attention and concentration for extended periods, ability to
perform activities within a schedule, maintain regular attendance, be
punctual within customary tolerance, ability to sustain ordinary
routine without supervision, ability to work in coordination with or
proximity to others without being distracted by them, ability to make
simple work related decisions, and ability to complete a normal
workweek without interruptions from psychologically based symptoms and

to perform at a consistent pace without an unreasonable number and length of rest periods. *A.R.* 285-286. Dr. Blackburn also characterized as markedly limited plaintiff's ability to interact with the general public, ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, ability to respond to changes in the work setting, ability to travel to unfamiliar places or use public transportation and ability to set realistic goals or to make plans independently. *A.R.* 286-287. Dr. Blackburn went on to note that plaintiff experienced episodes of deterioration or decompensation in work or work like settings which caused her to withdraw from that situation and/or experience exacerbation of symptoms. *A.R.* 287. He also noted that plaintiff was very dependent and does not go out without her husband and that she is easily bothered by minor events. *A.R.* 288. Dr. Blackburn estimated that plaintiff is likely to be absent from work, on average, more than three times a month. *A.R.* 289.

On December 13, 2006, Dr. Blackburn noted that plaintiff reported reduced stress. *A.R.* 293.

In January 2007, Dr. Blackburn noted that plaintiff had been referred for treatment beginning in January 2005 due to increased psychosocial stressors, with symptoms of anxiety, depression and stress related to caring for her medically fragile son. *A.R.* 300. Dr. Blackburn also noted that plaintiff experiences moderate levels of chronic anxiety and depression, is completely dependent on her husband, and has mild developmental delays. *Id.* In light of all of this, Dr. Blackburn opined that plaintiff, as of January 2007, was

unable to work. *Id.*

On June 18, 2007, Dr. Blackburn administered the Wechsler Abbreviated Scale of Intelligence ("WASI"), in which plaintiff achieved an IQ score of 61, which fell in the range of mentally deficient. *A.R.* 303-304.

On July 9, 2007, Dr. Blackburn completed a form for the Ohio Department of Job and Family Services, diagnosing mild mental retardation and chronic adjustment disorder with mixed emotional features (psychological dependency on husband). *A.R.* 305-306. Dr. Blackburn noted that plaintiff had no limitations in standing/walking; could lift ten pounds occasionally; was moderately limited in pushing/pulling; and was markedly limited in speaking. *A.R.* 306. He opined that plaintiff was unemployable and would remain so for 12 months or more. *Id.*

In a letter dated January 8, 2008, addressed to plaintiff's counsel, Dr. Blackburn reported that plaintiff's "condition remains essentially the same" and that she functions at "a low level only getting by with considerable support from her husband and mother." *A.R.* 330. He opined that plaintiff was unable to work, referring to two prior letters written by him that describe plaintiff's limitations, and noting that plaintiff has mild mental retardation, social and emotional immaturity, pathological dependence on husband, very low frustration tolerance, limited self insight and limited capacity to comprehend minimal expectations of social and vocational situations. *A.R.* 330-332.

After seeing plaintiff in September 2008, Dr. Blackburn completed

a Psychiatric/Psychological Impairment Questionnaire dated October 24, 2008. *A.R.* 321-329. Noting that plaintiff continued to be treated on a monthly basis, Dr. Blackburn diagnosed dysthymia and mild mental retardation / developmental delays. *A.R.* 321. Her current GAF was 55. *Id.* Dr. Blackburn opined that plaintiff was incapable of tolerating even low stress at work. *A.R.* 327.

On January 6, 2009, Scott Donaldson, Ph.D., a consulting psychologist, examined plaintiff. *A.R.* 334-342. During the evaluation, plaintiff was agitated but cooperative, and appeared to be intimidated by the process. *A.R.* 334. Plaintiff was appropriately dressed, adequately groomed, and she did not have difficulty elaborating on her responses. *A.R.* 335. In contrast with prior reports, plaintiff denied having any children and denied problematic interfamilial relationships. *A.R.* 334. She reported chronic pain in her back and knee and problematic relationships at work. *A.R.* 334-335. She also reported relating poorly to teachers and other students at school. *A.R.* 335. Plaintiff further reported that she was enrolled in a special education program before dropping out of school. *Id.* Plaintiff complained of situational anxiety and excessive worry. *A.R.* 336. She denied delusions or hallucinations, but admitted to paranoid ideation and obsessive thoughts about retaliation. *Id.* Dr. Donaldson noted that plaintiff's responses to questions indicated an alert state of consciousness and did not manifest signs of confusion, although her memory for past and recent events appeared limited. *Id.* He estimated that plaintiff's intelligence fell in the intellectually impaired range. *Id.* Dr. Donaldson also reported that plaintiff's

judgment is limited and suggested that she may need assistance in that regard. *Id.* Although she earlier denied having children, plaintiff reported living with her husband, son, two step-children and one step-child's girlfriend. *Id.* Noting that plaintiff may have responded randomly to his inquiries, Dr. Donaldson reported that the results of the MMPI-2 testing "are of questionable validity." *A.R.* 337. On the WAIS-IV, which Dr. Donaldson regarded as valid, plaintiff achieved a verbal IQ score of 58, a performance IQ score of 54 and a full IQ score of 55. *Id.* Dr. Donaldson diagnosed dysthymic disorder and generalized anxiety disorder. *A.R.* 338. Dr. Donaldson deferred a diagnosis of mild mental retardation because it was "not possible to determine if the claimant's intellectual deficit manifested itself during the developmental period or whether there had been a concomitant deficit in adaptive behavior[.]" *Id.* He opined that plaintiff's ability to understand, remember and carry out one- or two-step job instructions did not appear to be impaired; her ability to perform repetitive tasks did not appear to be limited; her level of motivation, interpersonal relationship skills and ability to withstand stress and pressures associated with day-to-day work activity appeared to be moderately limited. *Id.*

Dr. Donaldson also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). *A.R.* 340-342. He opined that plaintiff was markedly limited in her ability to make judgments on simple work-related decisions and that she was moderately limited in her ability to interact appropriately with the public and with supervisor(s) and co-workers. *A.R.* 340-341. He also opined that

plaintiff was unable to manage benefits in her own best interest. *A.R.* 342.

At the administrative hearing on January 10, 2008,[1] plaintiff testified that she injured her left knee while she was a passenger in a motor vehicle accident. *A.R.* 432-433. She described the pain in this knee "like needles," which is intermittent and which limits her ability to walk and to move things. *A.R.* 437-439. She has difficulty carrying laundry up and down steps. *A.R.* 439-440. Rest alleviates the knee pain. *A.R.* 438-439.

Plaintiff also testified that she is depressed and stressed primarily because of her concerns about family members and her son's health. *A.R.* 433-434, 444-46. Plaintiff is four feet, seven inches tall and weighs eighty pounds. *A.R.* 433. She has a hard time keeping food down, keeping weight on, and sleeping. *A.R.* 433-434, 444, 450. When she is stressed, she isolates herself and goes into a room to cry. *A.R.* 445-446. Attending couples counseling with Dr. Blackburn has helped her; her husband has been supportive. *A.R.* 447-448.

Plaintiff's son requires heart medication twice a day. *A.R.* 430-432. Her son is also developmentally delayed. *A.R.* 436. Plaintiff helps him with his homework by being there to "support him" and asking him to read his books to her. *A.R.* 435-436, 443.

Plaintiff testified that sometimes she can add, subtract, get change while shopping at stores, and read the newspaper. *A.R.* 442-443. She sometimes has problems with her concentration and memory and

---

[1]As noted *supra*, administrative hearings were held on January 10, 2008, December 9, 2008, and July 24, 2009. *A.R.* 362-456.

forgets to return calls. *A.R.* 451. She was not in special education classes in school. *A.R.* 428.

At the administrative hearing held on December 9, 2008, plaintiff testified that she leaves her home only with her husband. *A.R.* 393-94. She cannot climb stairs because of her knee. *A.R.* 396-397. She administers her son's heart medication, helps him get ready for school, and sometimes helps him get dressed or bathe himself. *A.R.* 397-99, 411. She helps him with his homework, including addition problems in math class, and plays games with him. *A.R.* 400-01. According to plaintiff, her son reads better than she does. *A.R.* 402-03.

Plaintiff testified that she was in regular high school classes. *A.R.* 419-20. She can write, add and subtract, but cannot multiply or divide. *A.R.* 403. She sometimes does the cooking at home, but her husband does a lot of the cooking. *A.R.* 410-411. She held only one job, as a clothes tagger in a thrift store, but quite after one month after she was asked to pick up trash from the floor. *A.R.* 404. She never worked thereafter because of her knee injury and depression. *A.R.* 404-09. She takes Ibuprofen for knee pain. *A.R.* 407-08.

Although plaintiff sometimes has difficulty getting along with family members, she has no difficulty getting along with other people. *A.R.* 409-10. During a typical day, plaintiff watches television, "lay[s] around a lot because it's hard for me to clean[,]" and sits around, talks and plays cards in the afternoon. *A.R.* 412-13. She sometimes does the grocery shopping and light housework. *A.R.* 413-14. Sitting is her most comfortable position. *A.R.* 417.

At the administrative hearing held on July 24, 2009, plaintiff testified that she currently weighs ninety pounds and takes Ensure to help maintain her weight. *A.R.* 369-370. She experiences severe depression a few times a week during which she avoids contact with everyone. *A.R.* 370. Because her temper is affected by her depression, she would have problems working closely with co-workers and with supervisors who were critical of her and her work. *A.R.* 370-71

Plaintiff also complained of headaches for which she takes Ibuprofen. *A.R.* 372. She naps once a day for an hour or so. *A.R.* 372-73. She sometimes cooks, does the laundry and washes the dishes. *A.R.* 378. She provides medication to her 14 year old son and helps bathe him. *A.R.* 374-75

The vocational expert noted that none of plaintiff's past employment as tagger, labeler, housekeeper and fast food worker lasted longer than thirty days. *A.R.* 381. Asked to assume a claimant with plaintiff's vocational profile, a limitation to light work and the mental limitations recommended by Dr. Donaldson,[2] the vocational expert testified that such a claimant could perform light, unskilled, simple, repetitive work such as a cleaner (1100 jobs available locally and 6,000 jobs available state-wide), as a labeler and marker (450 jobs locally and 3,500 jobs state-wide) and as a packer (2,000 jobs

---

[2]These limitations include mild limitations in understanding and remembering simple instructions and carrying out simple instructions and responding appropriately to usual work situations and to changes in routine work setting; moderate limitations in understanding and remembering complex instructions, carrying out complex instructions, interacting appropriately with the public, supervisors and co-workers; marked limitations in making judgments on simple work-related decisions and making judgments on complex work-related decisions. *A.R.* 338, 340-341.

locally and 9,000 jobs state-wide).  *Id.*  Dr. Swearingen's limitations[3] would also permit such employment. *A.R.* 383.

Assuming Dr. Miser's physical limitations – *i.e.*, sitting for no more than three hours and standing and walking for no more than one hour out of an eight-hour day – such a claimant could not perform the light, unskilled jobs previously described.  *Id.*

## IV.   Administrative Decision

In his decision, the administrative law judge found that plaintiff's severe impairments consist of left knee arthritis, low weight, borderline intellectual functioning/mild mental retardation, and affective and anxiety-related disorders. *A.R.* 19-20.  Plaintiff's impairments neither meet nor equal a listed impairment and leave her with the residual functional capacity to perform a reduced range of light work.  *A.R.* 20-24.  Relying on the testimony of the vocational expert, the administrative law judge found that plaintiff's residual functional capacity permits her to perform work that exists in significant numbers, including such jobs as a cleaner and laborer/packer.  *A.R.* 24-25.  The administrative law judge therefore concluded that plaintiff is not disabled within the meaning of the Social Security Act.  *A.R.* 25.

## V.   Discussion

In *Plaintiff's Statement of Errors*, Doc. No. 9, she raises three challenges to the administrative law judge's conclusion: (1) the administrative law judge erred in determining that plaintiff did not

---

[3]Dr. Swearingen's opinion is detailed *supra* at pp. 5-7.  *See also A.R.* 112-113.

have an impairment that meets or equals the criteria listed in Listing 12.05(B) or (C); (2) the administrative law judge failed to properly weigh the medical source opinions; and (3) the administrative law judge failed to properly evaluate plaintiff's credibility.  The Court shall address each contention.

**A.  The administrative law judge's finding that there was no evidence of mental retardation during the developmental period.**

Plaintiff argues that the administrative law judge erred at step three of the sequential evaluation because plaintiff has an impairment that meets or equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05(B) and (C), *i.e.*, mental retardation.  Listing 12.05 requires, in pertinent part, the following:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e., the evidence demonstrates or supports onset of the impairment before age 22.*
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> *         *         *         *
>
> B.  A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

*Id*. (emphasis added).  Therefore, in order to meet Listing 12.05, a mental impairment must satisfy both the description in the introductory paragraph of § 12.05 ("i.e., the evidence demonstrates or

18

supports onset of the impairment before age 22") and one of the four
sets of criteria listed in subparagraphs A through D. *Foster v.
Halter*, 279 F.3d 348, 354 (6th Cir. 2001). In this case, plaintiff
contends that she satisfied criteria under subsection (B) or ©.

There is no dispute that plaintiff's IQ scores satisfy the
requirements under Listing 12.05(B) and (C) and no dispute that
plaintiff had other severe impairments imposing a significant work-
related limitation of function. Instead, plaintiff challenges the
administrative law judge's finding that there was no evidence of
mental retardation during the developmental period, *i.e.*, before the
age 22. *A.R.* 19-20. In making this argument, plaintiff relies on
*McPeek v. Sec'y of Health and Human Servs.*, No. 93-5204, 1994 WL 56929
(6th Cir. Feb. 24, 1994), for the proposition that "absent proof that
the claimant suffered some type of brain or neurological trauma after
the development period, an onset prior to age 22 must be assumed."
*Statement of Errors*, p. 14. *See also Plaintiff's Reply to Opposition
to Statement of Errors*, Doc. No. 11 ("*Reply*"), pp. 2-3. The
Commissioner argues that plaintiff's reliance on *McPeek* is misplaced.
Doc. No. 10, pp. 9-12.

In *McPeek*, the United States Court of Appeals for the Sixth
Circuit concluded that substantial evidence did not support the
Commissioner's finding that the claimant functioned on an intellectual
level above the mental retardation range before age twenty-two.
*McPeek*, 994 WL 56929, at *2 (citing, *inter alia*, the Commissioner's
medical expert who opined that a person's mental ability remains
similar unless one suffers a brain or neurological trauma or due to

the aging process or disease).  In so finding, the Sixth Circuit noted

that plaintiff's IQ scores fell within the mental retardation range

and that failing academic grades were consistent with someone with

significantly impaired performance before age twenty-two.  *Id.*

Even if *McPeek* stands for the broad proposition for which

plaintiff cites it, the Sixth Circuit has since rejected that

proposition because the Listing of Impairments has been amended since

*McPeek* was decided:

> The *McPeek* decision applied an earlier version of the
> Listing of Impairments, which has since been amended to
> clarify that a claimant must establish both that he
> currently has an IQ of 60 through 70 and that he exhibited
> subaverage mental functioning and adaptive deficits during
> his developmental period.  *See* 65 Fed.Reg. 50746, 50776
> (August 21, 2000); *see also Foster*, 279 F.3d at 354
> (discussing the amendment).  The reasoning in *McPeek* is thus
> no longer consistent with the showing required by the
> regulations, and this Circuit's published case law has not
> followed *McPeek*.  *See Foster*, 279 F.3d at 354-55
> (interpreting listing 12.05C to require separate evidence,
> beyond present IQ scores, of deficits during the claimant's
> developmental period).

*Turner v. Comm'r of Soc. Sec.*, No. 09-5543, 2010 WL 2294531, at *3

(6th Cir. June 7, 2010) (addressing claimant's argument that *McPeek*

stands "for the proposition that, absent evidence that a claimant's IQ

has declined, present IQ scores demonstrate significantly subaverage

intelligence and adaptive deficits during the developmental period").

Plaintiff also argues that, even if *McPeek* is no longer

controlling authority, she has presented evidence of an onset during

the developmental period beyond her present IQ scores, *i.e.*, the

"records that demonstrate[] her failing grades and need for cognitive

assistance while in school."  *Reply*, pp. 2-3.  However, the record

also includes evidence that plaintiff was not in special education classes. *A.R.* 419-20, 428. Plaintiff herself testified that her educational problems stemmed from desire to defy her mother. *A.R.* 110. There is therefore evidence that plaintiff's failing grades were the result of factors other than subaverage intellectual functioning. Moreover, the Sixth Circuit more recently has clarified that it "has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two." *Hayes v. Comm'r of Soc. Sec.*, No. 09-5409, 357 Fed. Appx. 672, at *677 (6th Cir. Dec. 18, 2009).

Plaintiff next attacks the administrative law judge's finding that plaintiff's current level of functioning, *e.g.*, currently literate, carrying out household chores and caring for a special needs son, is inconsistent with a conclusion that she experienced deficits in adaptive functioning prior to age 22. *Reply*, p. 3. However, as noted *supra*, Listing 12.05 expressly requires evidence of a "deficit in adaptive functioning" prior to the age of 22. *See also Turner*, 2010 WL 2294531, at *492 (noting that adaptive functioning includes social skills, communication, and daily living skills). A claimant's current functioning may be considered in making this determination. *See Hayes*, 357 Fed. Appx. at 677 (finding no deficits in adaptive functioning where, *inter alia*, plaintiff cared for herself and husband, shopped, cooked meals, did laundry, managed finances, and takes public transportation); *Burrell v. Comm'r of Soc. Sec.*, No. 99-4070, 2000 WL 1827799, at *2 (6th Cir. Dec. 8, 2000) (noting that the claimant "has remained fairly active, maintains an interest in his

household, and enjoys apparent satisfactory relationships with family members.  He drives and can lift small weights with both arms" and therefore "is still physically capable of earning a living and contributing to society").  Accordingly, this circuit's precedent supports the administrative law judge's reference to plaintiff's adaptive functioning in this case.

Viewing the record as a whole, therefore, the Court concludes that the administrative law judge's finding that plaintiff does not have an impairment that meets or equals the criteria of Listing 12.05(B) or (C) enjoys substantial support.

**B.    The administrative law judge's evaluation of the medical source opinions.**

Plaintiff next argues that the administrative law judge failed to properly weigh the medical source opinions, contending that the opinions of Dr. Blackburn, a treating psychologist, and Dr. Miser, a treating physician, were improperly rejected.  *Statement of Errors*, pp. 16-19; *Reply*, p. 2.  To be afforded controlling weight, the opinion of a treating physician must be well-supported by medically acceptable clinical and laboratory diagnostic techniques, and must not be inconsistent with other substantial evidence in the record.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); 20 C.F.R. § 416.927(d)(2).  In weighing the opinions of treating physicians, an administrative law judge must consider such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence, and its consistency with the record as a whole.  20 C.F.R. § 416.927(d)(2) - (6); *Wilson v. Comm'r*

22

*of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Even where the administrative law judge declines to accord controlling weight to the opinion of a treating physician, the administrative law judge "must still determine how much weight is appropriate. . . ." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). Moreover, an administrative law judge must provide "good reasons" for discounting the opinions of a treating physician, *i.e.*, "reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (citing Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9, at *12, 1996 WL 374188, at *5).

The administrative law judge in this case rejected Dr. Miser's assessment that plaintiff was substantially limited in her ability to work.

> William Miser, M.D., opined that the claimant was limited to a substantially reduced range of sedentary work that is incompatible with fulltime work activity. . . ., but Dr. Miser's assessment appears to be based primarily on the claimant's subjective complaints of pain rather than any objective evidence. The claimant's treatment notes document only very conservative care with no indication of the frequency and intensity of pain reported to Dr. Miser. Further, as summarized in this decision, the claimant's actual level of activities of living are inconsistent with her subjective report to Dr. Miser. Accordingly, Dr. Miser's assessment is rejected.
>
> *          *          *          *
>
> Dr. Miser suggested that the claimant was incapable of even low stress work and that pain would frequently interfere with attention and concentration. . . . However, Dr. Miser is not a mental health professional and the claimant's complaints of pain, as noted above, are inconsistent with the objective medical treatment record. Dr. Miser's opinion appeared to be based on the assessment of Dr. Blackburn, the

> claimant's treating psychologist, who has reported a mental
> functional capacity suggesting an inability to perform
> competitive work. . . .

*A.R.* 23 (citation to record omitted).  However, the administrative law

judge also considered, but rejected, Dr. Blackburn's conclusions.

> William Blackburn, Ph.D., a psychologist, suggested that the
> claimant was limited to sedentary work . . . but Dr.
> Blackburn is a mental health professional and did not treat
> the claimant for physical conditions.  As a psychologist, he
> lacks the expertise to make such an assessment.
>
> *            *            *            *
>
> [Dr. Blackburn] reported a mental functional capacity
> suggesting an inability to perform competitive work and
> consistent with marked mental work-related limitations. . .
> . It is concluded that Dr. Blackburn's assessments are based
> substantially on the subjective presentation and reports of
> the claimant, which are not entirely credible.  Therefore,
> Dr. Blackburn's assessments are rejected.

*Id.* (citation to record omitted).  This Court agrees that Dr.

Blackburn's assessments in this regard are entitled to little weight.

The administrative law judge found that plaintiff's subjective

complaints were disproportionate and not supported by the record.

This conclusion finds substantial support in Dr. Donaldson's report

following his consultative examination of the plaintiff.  For example,

Dr. Donaldson noted that plaintiff's responses to questions indicated

an alert state of consciousness with no signs of confusion.  *A.R.* 336.

Plaintiff was appropriately dressed, adequately groomed, and she had

no difficulty elaborating on her responses.  *A.R.* 335.  Dr. Donaldson

opined that plaintiff's ability to understand, remember and carry out

one- or two-step job instructions did not appear to be impaired and

that her ability to perform repetitive tasks did not appear to be

limited.  *A.R.* 338.  He further opined that her level of motivation,

interpersonal relationship skills and ability to withstand stress and pressures associated with day-to-day work activity appeared to be only moderately limited. *Id.* Further support for the administrative law judge's finding in this regard is found in the records of Dr. Swearingen, who performed a consultative psychological evaluation. *A.R.* 109-113. Dr. Swearingen opined that plaintiff's ability to relate to others, including fellow workers, and her mental ability to maintain attention, concentration, persistence, and pace to perform repetitive tasks were only mildly impaired, *A.R.* 113, and that plaintiff's mental ability to understand, remember, and follow instructions and her mental ability to withstand stress and pressures of day-to-day work activity were only mildly to moderately impaired. *Id.* In short, the Court concludes that the administrative law judge did not err in his evaluations of the medical opinions reflected in the record.

Plaintiff's insistence that Dr. Blackburn's opinion was "based upon clinical and diagnostic findings," *Statement of Errors*, p. 17 (citing *A.R.* 283, 330-331), does not militate a different result. As an initial matter, two of the pages in the record to which plaintiff cites are simply letters that Dr. Blackburn wrote that do not provide evidence of objective findings. *A.R.* 330-331. The third page cited by plaintiff is simply a form taken from an evaluation in June 2006 with some boxes checked reflecting "clinical findings," containing very little explanation for the findings. *A.R.* 283. Moreover, plaintiff points to no treatment note detailing objective findings to support Dr. Blackburn's conclusion that plaintiff has marked mental

work-related limitations.  Instead, the record reflects that plaintiff saw Dr. Blackburn sporadically for family counseling from 2005 through 2007.  *See*, *e.g.*, *A.R.* 291-99.  In early 2005, Dr. Blackburn noted that plaintiff's prognosis was "fair" and that she would not require treatment for more than nine months.  *A.R.* 129.  Taken together with ample instances of plaintiff's adaptive functioning discussed *supra*, the Court is persuaded that the administrative law judge did not err in his evaluation of the opinions of Drs. Miser and Blackburn.

**C.    The administrative law judge's evaluation of plaintiff's credibility.**

Finally, plaintiff challenges the administrative law judge's assessment of plaintiff's credibility, arguing that her marginal daily activities were not inconsistent with her allegations concerning the intensity, persistence and limiting effects of her symptoms. *Statement of Errors*, pp. 19-20.  Plaintiff also contends that the administrative law judge erred when he relied upon his lay observations of plaintiff during the hearing.  *Id*. at 20.

An administrative law judge's findings concerning the credibility of a claimant's testimony about her pain or other symptoms "are to be accorded great weight and deference, particularly since an administrative law judge is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 531 (6th Cir. 1997).  "Nevertheless, an administrative law judge's assessment of a claimant's credibility must be supported by substantial evidence."  *Id*.  The Commissioner, speaking through the Rulings, mandates in part:

The reasons for the credibility finding must be grounded in evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator to simply recite the factors that are described in the regulations for evaluating symptoms. The determination must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186.

In the case presently before the Court, the administrative law judge did not err in his analysis of the evidence relating to plaintiff's allegations of disability and the limiting effects of her alleged symptoms. The administrative law judge analyzed plaintiff's credibility and subjective complaints as follows:

The claimant testified that she continues to experience depression and anxiety but reports some improvement with medications. She denied any side effects from her medications. She said that she continues to be uncomfortable around others and becomes badly depressed about twice a week. She stated that she has difficulty accepting criticism from others and is unable to control her temper. She said that she weighs 70 pounds. She represented that she has a torn ligament in her left knee and continues to have related pain. She testified that she has headaches that she controls with ibuprofen. After careful consideration of the evidence, it is concluded that her medically determinable impairments could reasonably be expected to cause some of her alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of those symptoms are not credible to the extent that they are inconsistent with the residual functional capacity outlined in this decision.

The record confirms that the claimant has a left knee condition and low weight, but her treatment has been intermittent and very conservative. Although she testified that she weighs just 70 pounds, her height is just four feet, seven inches, and there is no evidence of substantial, related conditions. There is no objective evidence to suggest that her weight or her knee condition would prevent

27

her from engaging in a full range of light exertional work, as was found in the prior ALJ decision. . . .

\*                    \*                    \*                    \*

The claimant's subjective complaints are clearly disproportionate to and not supported by the objective and substantial evidence in the record.  Her actual level of adaptive functioning is inconsistent with her IQ scores. Indeed, Dr. Donaldson observed that the claimant was appropriately dressed, adequately groomed, alert, and fully oriented, with no manifested signs of confusion. . . . According to Dr. Donaldson, there was no evidence of impulsiveness, compulsiveness, difficulty elaborating on responses, manifestations of flights of ideas, symptoms of mania, or anhedonia.  The claimant reported that she watched television, cared for her son, cooked, cleaned, did the laundry, maintained friendships, and shopped for groceries monthly.  The claimant had completed her own disability forms. . . . She reported that she played cards and socialized. . . . She reported that she had never been fired from a job and enjoyed playing cards and working crossword puzzles. . . . She denied any difficulty managing her money and reported good reading, writing, and spelling skills. . . .

Furthermore, the claimant's testimony was extremely argumentative and exaggerated.  She exhibited an inconsistent demeanor.  She was observed to attend the hearing proceedings closely and fully without any noted distractions or overt pain behavior.  Her level of activity and her self described ability is not consistent with the level and persistence of symptoms and limitations that she alleges, including her testimony that she can only sit for 15 minutes, and walk for less than a block. . . . She testified that she cleans some laundry and washes some dishes, but then said that her disabled husband does the cooking.  She acknowledged that she quit a job tagging clothes at a thrift store because she was asked to also pick up trash, not because of any particular disability.  Rather, she testified that she did not have any difficulty whatsoever tagging clothes.

The evidence discloses that the claimant has required only very conservative treatment.  There is no documentation of significant, persistent side effects from her medications, and she has not been regularly taken [sic] her medication. In summary, the location, duration, frequency, and intensity of her alleged symptoms, as well as precipitating and aggravating factors, are adequately addressed and accommodated in the residual functional capacity outlined in these findings.

*A.R.* 23-24 (citations to the record omitted).  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Id.* citing *Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  This Court concludes that the administrative law judge's credibility determination applied all appropriate standards and enjoys substantial support in the record.

In short, the Court concludes that the decision of the Commissioner is supported by substantial evidence and must therefore be affirmed.

It is therefore **RECOMMENDED** that the decision of the Commissioner be affirmed and that this action be dismissed.


If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation.*

*See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


January 23, 2012                          s/Norah McCann King
  (Date)                               Norah M<sup>c</sup>Cann King
                               United States Magistrate Judge

30