IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DIANNA L. ARMS,

    Plaintiff,

vs.                                            Civil Action 2:10-CV-977
                                                 Judge Sargus
                                                 Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**OPINION AND ORDER**

Plaintiff seeks review by this Court of the denial of her application for supplemental security income. On January 23, 2012, the United States Magistrate Judge recommended that the decision of the Commissioner of Social Security be affirmed. *Report and Recommendation*, Doc. No. 12. This matter is now before the Court on plaintiff's objections to that recommendation. *Objection*, Doc. No. 13. The Commissioner has filed a response to those objections. *Response*, Doc. No. 14.

I.

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the ALJ ("ALJ") are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones, v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d

506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990) (citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion, *Longworth*, 402 F.3d at 595.

## II.

Plaintiff Dianna Arms alleges that she has been disabled since November 1, 2002 by reason of physical and mental impairments. The ALJ found that plaintiff's severe impairments consist of left knee arthritis, low weight, borderline intellectual functioning/mild mental retardation, and affective and anxiety-related disorders. *A.R.* 19-20. However, the ALJ also found, *inter alia*, that plaintiff's mental impairment neither meets nor equals Listing 12.05B or 12.05C and, relying on the testimony of a vocational expert, that her residual functional capacity for a reduced range of light work permits the performance by her of a significant number of jobs, including work as a cleaner and laborer/packer. *A.R.* 20-25. Accordingly, the ALJ concluded that plaintiff is not disabled within the meaning of the Social Security Act. *A.R.* 25.

In her *Statement of Errors*, Doc. No. 9, plaintiff argued that (1) the ALJ erred in determining that plaintiff's reduced cognitive functioning does meet or equal Listing 12.05B or C; (2) the ALJ failed to properly weigh certain medical source opinions; and (3) the ALJ failed to properly evaluate plaintiff's credibility. In a lengthy and thorough *Report and Recommendation* rejecting each of those arguments, the Magistrate Judge concluded that the ALJ applied all correct standards and that his decision enjoyed substantial support in the record. In her objections, plaintiff renews each of those arguments. The court will consider the matter *de novo*.

2

*See* 28 U.S.C. §636(b); Fed. R. Civ. P. 72(b).

## III.

Plaintiff first contends that her impaired cognitive functioning satisfies Listing 12.05, which addresses mental retardation. That listing requires evidence of

> . . . significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>     \*        \*        \*
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

The administrative record contains the following:

- IQ measurement of 63 by William Blackburn, Ph.D., June 14, 2006.
- IQ measurement of 61, by William Blackburn, Ph.D., June 18, 2007.
- IQ measurement of 55, by Scott Donaldson, Ph.D., January 6, 2009.

All three IQ test results contained in the record are well below the threshold of 70; the most recent test was performed by the consulting psychologist hired by the Commissioner to conduct an independent evaluation. Similarly, the psychologists of record uniformly compute the claimant's global assessment of functioning ("GAF") in scores between 55 and 58 indicating

3

moderate impairment. Finally, the consulting psychologist, Dr. Donaldson, also opined that the claimant could not manage benefits, should she be entitled to SSI.

This part of the record overwhelmingly demonstrates "subaverage general intellectual functioning," as the term is used in Listing 12.05. The ALJ determined that the claimant had not established that the onset of this listed impairment manifested itself during the developmental period, meaning prior to age 22. The record on this issue is scant.

The educational records submitted consists of two pages of the claimant's transcripts. A.R. 107, 108. The records demonstrate:

1) She completed only the 9th grade;

2) In the 9th grade, she received thirteen semester grades, which included six F's, two D's, 4 C's, and one B in a class entitled "Life Skills." The F's were given in math and writing, the most educationally significant classes taken by the claimant in her final year of school. Thereafter, the claimant did not return to school.

The claimant testified that she was not in special education classes during her one year of high school. The first ALJ who rendered an opinion in this found that the claimant's educational struggles related to her desire to defy her mother. This finding was adopted in the second and final ALJ decision from which this appeal is taken. The record citation for this finding is to page 110 of the administrative record, which contains only the following:

C. Educational History

Ms. Arms got as far as the ninth grade in school and reported that she quit because she was dumb and did not want to listen to her mother. Ms. Arms reported that she did not enjoy school or do well in school. She was never in any special classes school. She reported that she got along with some of the other students and with some of the teachers. She reported having attendance problems in school because she did not want to go.

4

In this Court's view, this reporting by the claimant does not provide substantial evidence that she quit school in order to defy her mother. It is not inconsistent, and actually probable, that her inability to obtain good grades caused her to both quit school and argue with her mother.

In summary, the record reveals uncontradicted evidence of the claimant's IQ in the range of only 55. It is also undisputed that the claimant finished ninth grade, failed most of her classes that year, and received no further education. The Court is concerned that the record is so sparse, only two pages, as to the potential manifestation of the condition prior to age 22. The claimant is only 39, making further development of the record a relatively simple task.

## IV.

Plaintiff next contends that the ALJ did not give proper deference to the opinion of Dr. Miser, her treating physician. Dr. Miser, who has treated the plaintiff on a regular basis since 2001, completed a lengthy questionnaire in which he described both physical and mental limitations impairing the claimant's ability to work. He opined that she should not carry any amount of weight and could only occasionally lift more than ten pounds. He also concluded that the claimant suffered from post traumatic stress disorder, rendering her "incapable of even low stress." A.R. 241. For this conclusion, he expressly referenced the findings of Dr. Blackburn, a psychologist to whom Dr. Miser had referred the claimant.

During the hearing before the ALJ, the vocational expert was asked to assume the impairments described by Dr. Miser. A.R. 321-333 (described in the transcript as Exhibit 13F). The following colloquy occurred at the hearing:

    Q    Assuming that same age, education, past work and light work exertionally, but mental limitations described as Exhibits 14F, pages seven through eight, how would that impact on a person's ability to function at a job?

5

A       Well, Your Honor, the part that throws me there is the marked limitation in terms of making simple decisions. Now, at the same time, there doesn't appear to be any limitation on following simple instructions, but if an individual's unable to, or has serious limitations making simple work decisions, I tend, really tend to think that's going to compromise competitive work on a sustained basis.

Q       Assuming that the same age, education, past work of no past work and limited mentally as – light work exertionally, the person could do light work exertionally and they had the mental limitations described in Exhibit 13F, pages three through seven, any work in the economy?

A       In my opinion, no, Your Honor.

Q       And why is that?

A       Based on the combined marked limitations in terms of mental functioning. Attention and concentration, attendance, daily pace, supervisors, coworkers are some of those rated to be marked in terms of limitation.

Q       Assuming the same age, education and past work, with limited education and the no past work. Person could do light work but they had the mental limitations described in Exhibit 8F, pages four through nine, any work?

A       No, my response would be the same, Your Honor, based on the marked limitations that would preclude the activity.

Q       Assuming that younger individual, limited education, past – no past work and light, light work exertionally and the mental limitation described at Exhibit 1F, pages four and five, I believe, is a narrative, any work?

A       Yes. In my opinion, those limitations would permit light, unskilled work, simple repetitive in nature and my response would be the same as it was to the first hypothetical for Exhibit 14F, work as a cleaner, marker, labeler and packer would be, as I noted, some examples.

ALJ: Mr. Woodson?

EXAMINATION OF VOCATIONAL EXPERT BY ATTORNEY:

Q       All right. If we, if we added to the judge's first hypothetical, limitations set by, physical limitations set by Dr. Mizer, opining that the claimant would be limited to sitting for three hours and standing and walking one hour out of an 8-hour day, would the claimant be able to perform those light, unskilled jobs that you presented for us today?

6

  A  No.

A.R. 381-383.

  The ALJ weighed the opinions of the treating physician and psychologist as follows:

> William Miser, M.D., opined that the claimant was limited to a substantially reduced range of sedentary work that is incompatible with fulltime work activity (Exhibit 6F, pp. 4-8), but Dr. Miser's assessment appears to be based primarily on the claimant's subjective complaints of pain rather than any objective evidence. The claimant's treatment notes document only very conservative care with no indication of the frequency and intensity of pain reported to Dr. Miser. Further, as summarized in this decision, the claimant's actual level of activities of living are inconsistent with her subjective report to Dr. Miser. Accordingly, Dr. Miser's assessment is rejected.
>
> William Blackburn, Ph.D., a psychologist, suggested that the claimant was limited to sedentary work (Exhibit 11F, p. 5), but Dr. Blackburn is a mental health professional and did not treat the claimant for physical conditions. As a psychologist, he lacks the expertise to make such an assessment.
>
> Dr. Miser suggested that the claimant was incapable of even low stress work and that pain would frequently interfere with attention and concentration (Exhibit 6F, p. 7). However, Dr. Miser is not a mental health professional and the claimant's complaints of pain, as noted above, are inconsistent with the objective medical treatment record. Dr. Miser's opinion appeared to be based on the assessment of Dr. Blackburn, the claimant's treating psychologist, who has reported a mental functional capacity suggesting an inability to perform competitive work and consistent with marked mental work-related limitations (Exhibits 8F, 9F, pp. 12; 13F, pp. 4-8, 10, 12). It is concluded that Dr. Blackburn's assessments are based substantially on the subjective presentation and reports of the claimant, who is not entirely credible. Therefore, Dr. Blackburn's assessments are rejected.

A.R. 23.

  The Court first notes that Dr. Miser is the only medical doctor who has rendered an opinion on the claimant's physical impairments. He has treated her since 2001, has presented documented, extensive medical treatment records, and has completed a lengthy questionnaire detailing his findings. While his treatment of the claimant's knee impairment has been

7

conservative, his opinions are well documented and wholly unrefuted.

Dr. Miser is also the claimant's family physician. He referred her to Dr. Blackburn, a psychologist. Dr. Miser is competent to include in his analysis the findings of Dr. Blackburn. In turn, while Dr. Blackburn is not qualified to opine on physical impairments, he is competent to include Dr. Miser's findings in his conclusions. Consequently, the conclusion reached by the ALJ – that Dr. Miser is not competent to opine on mental health issues and Dr. Blackburn is not competent to opine on physical impairments - improperly discards the opinions of the treating physician and ignores the role of the family physician. As her family physician, Dr. Miser made the referral to the mental health specialist and continued to provide her with overall treatment, as his notes indicate. If anything, the findings of Dr. Blackburn submitted to Dr. Miser actually corroborate and support Dr. Miser's findings. Standing uncontradicted by any other opinions from medical doctors, Dr. Miser's opinion cannot be so easily discarded.[1] The ALJ must give the treating physician's opinion "controlling weight" if it is supported by medically acceptable diagnostic techniques and not inconsistent with other credible evidence of record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

## V.

The Court understands that both the ALJ and the Magistrate Judge who conducted an earlier review of those same facts had a most difficult task, which each performed with great skill. The claimant is of a young age for someone claiming total disability. She has some serious physical limitations, but has received only conservative treatment. On the other hand, she weighs

---

[1] Because of the disposition of the first two objections raised by the claimant, the Court finds no need to address the third issue relating to evaluation of claimant's pain.

8

only 70 to 80 pounds, has an IQ in the range of 55, has injury to her knee, and has no real work history.

This Court concludes, that the basis for the denial of the claim - particularly the rejection of the opinions of Dr. Miser and Dr. Blackburn - improperly discarded the opinions of the treating physician. Further, as to the mental retardation, the Court finds the record is incomplete as to the question of whether the condition manifested itself before claimant turned twenty-two years of age. This is particularly of concern, since all mental health professionals have determined her IQ to be approximately 55, far below the threshold of 70.

It is **ORDERED** that the decision denying benefits is **REVERSED**. Consistent with this opinion, the Commissioner may either 1) award benefits; or 2) pursuant to 42 U.S.C. § 405(g), Sentence 4, obtain additional evidence and thereafter review this claim in light of such new information.

**IT IS SO ORDERED.**

3-28-2012
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**